Good morning, Your Honors, and may it please the Court. Jared Gimmer, on behalf of the appellant, Edward Joseph Parson. I'll begin by addressing the second issue raised in our opening brief, which concerns whether the testimony of Rachel Murdoch as a whole constituted impermissible vouching. The standard of review for that issue is abuse of discretion. Ms. Murdoch's testimony was about S.S.'s credibility. It could have been about nothing else. When we filed our motion below to exclude Ms. Murdoch's testimony as vouching, the government responded that Ms. Murdoch's testimony would provide the jury with context to judge S.S.'s credibility. In essence, the government acknowledged in its response, Ms. Murdoch's testimony was about S.S.'s credibility. And I certainly acknowledge that Ms. Murdoch never explicitly said she was talking about S.S. She never opined that S.S. was telling the truth or that she had any way of knowing that S.S. was telling the truth. But when we have general statements by an expert about the disclosure process of children who disclose sexual abuse, as we had here, that testimony can only have meaning to the jury if it tells the jury something about the disclosure process of the accuser. Ms. Murdoch's testimony was only Do you think it takes special expertise to understand how adults disclose things? I do not, Your Honor. And you similarly do not think that special expertise would help to understand children's allocution, correct? That is correct, Your Honor. You don't think there are any different disciplines that apply in the two settings? I think there can be very specific circumstances in which we might discuss the medical reasons, the medical psychological reasons that may come into play in disclosing abuse, whether for children or adults. But there was no indication that there was any medical reason for delays in disclosure here. Why wouldn't this be one of the specific exceptions that you're that are unique to children where they won't, they don't come forward or they come forward in a different way or at different stages that's common and it's understood, but it may not be understood to a juror. It may not be common knowledge. I disagree that it wouldn't be within the natural intelligence of jurors to understand why children might not want to disclose right away. I don't think it would surprise any juror to or even be outside of their knowledge to understand that children might not disclose immediately because they don't understand what happened to them was wrong, which was a subject of discussed. Or they may simply be too young to put into words what happened to them. Again, an issue that Ms. Murdoch discussed. And also that as time goes on, as there may be distance from the abuser, as the child becomes older, it becomes easier for them to understand what happened and to disclose what of everyone who would qualify as a juror. Your Honor, I believe it is in Hill, this court said that jurors are presumed to be fitted for determining credibility by their natural intelligence and their natural intelligence. But also, I'm not sure that even the mere fact that it goes beyond their natural intelligence would be adequate. If that's the only test for admissibility of this kind of testimony, Your Honors, Benally was flatly wrongly decided. In Benally, the expert was going to offer testimony that the whether false confessions occur and why someone might offer a false confession. Those are two subjects that are certainly beyond the natural intelligence of the average juror. And yet this court said that would, that kind of testimony would inevitably encroach on the jury's role to determine credibility. I don't really think that simply saying that jurors might need more help to understand children and judge their credibility can be enough, because then all we're really doing is offering expert testimony to bolster their credibility, which this court has said is improper. But that seems to defy the very words of the rule of evidence. That is, if it would help the jury, isn't that correct? What you're saying is that you don't give anything to the jury in these cases for fear that it may dribble over into credibility. I believe that helpfulness is what the rule focuses on, Your Honor. That is true. But this court has made it clear that when experts broach the territory of the credibility of witnesses, that is not helpful, because that is purely the role of the jury to determine. Isn't it better then to approach the whole issue by qualifying the expert, putting him on, and waiting until there's a question that seems to elicit something regarding the credibility of any witness? Isn't that a better way to proceed? That would be a very good way of proceeding in a typical case when we're talking about an expert actually opining on the credibility of the witness themselves. But here, Ms. Murdoch did not do that. What Ms. Murdoch did, however, do was offer testimony about a class of persons. And that class of persons categorically included S.S. in this case. It was beyond any shadow of a doubt that S.S. was within the class of persons that Ms. Murdoch was discussing. And that class of persons was children who disclose sexual abuse. The moment S.S. took the stand and told the jury she had been sexually abused, she became a member of the class of persons that Ms. Murdoch testified about. And now, all of Ms. Murdoch's testimony is not simply about a class of persons. It's about S.S. And so, this... ...allowing an expert like her to testify in child sexual abuse cases. And that is how they proceed in dealing with the victim. Wouldn't we really be an outlier? I don't know that this court would be an outlier, Your Honor. The only circuit court that I am aware of that has explicitly in a published opinion addressed exactly this kind of testimony was Big Head from the Ninth Circuit in 1997. But part of the problem with going back to Big Head is it didn't really acknowledge the rule about experts not opining on credibility in any way. And this is a quote from Big Head at 1331. At the very end of Big Head is the only time vouching is discussed in the majority opinion. And they say, we see no improper buttressing as Boychuck, the expert, testified only about a class of victims generally and not the particular testimony of the child victim in this case. But as I said, Your Honor, that's really just a way of backdooring the testimony to bring in improper testimony. Ms. Murdoch's testimony was about S.S. even if she never said so. It had no bearing on the case if it was not about S.S. And we see the government indicate that in its own arguments to the jury. In its opening statements, the government says focus on S.S., only S.S. can tell you what the defendant did to her, and then immediately followed that by saying that Ms. Murdoch would lay a foundation to understand child sexual abuse victims. In other words, Ms. Murdoch was there to talk about S.S. And in closing, the government said, and I'll quote here, this is volume three, page 880, Ms. Murdoch corroborated S.S.'s process of disclosure. In other words, she vouched for S.S.'s process of disclosure, and therefore she vouched about S.S.'s credibility. Can you address harmless error quickly? Yes, Your Honor. She was the first witness, and this was a long trial, and there were lots of witnesses. Why did this make the difference? The fact that Ms. Murdoch was the first witness is actually, I think, very important, Your Honor. The government made its statements in opening about the importance of S.S.'s credibility and Ms. Murdoch's role with that, and then brought out Ms. Murdoch, and S.S. testifies immediately after. And then we do hear from other witnesses, but no one is there to actually corroborate S.S.'s claims of sexual abuse. It's all tangential at that point. And given what the importance the government placed on S.S.'s credibility, and the importance it placed on Ms. Murdoch's testimony in association with that credibility, I believe it becomes apparent that the government was encouraging the jury to rely on Ms. Murdoch. Mr. Parson undermined his own credibility at trial, didn't he? Talking about his meth use and the fact that he did physically abuse his girlfriend, child's mother. He undermined his own abuse, and there were several witnesses who were able to provide corroborating details to much of what the child victim said about where things occurred, whether her mother was gone or where her mother went when these things happened. There was a lot of corroborating detail. There was corroborating detail as to tangential aspects of the disclosures. They didn't necessarily prove that the disclosure of sexual abuse itself was true, but simply that other aspects of her testimony was true. And I should go ahead and address Dr. Cave very quickly. To the extent that Dr. Cave's testimony could have mitigated the harm caused by Ms. Murdoch, that simply turns the trial into a battle of experts at that point over whether S.S. is credible. But if the trial becomes a battle of experts, Your Honors, then the erroneous admission of Ms. Murdoch's testimony certainly isn't harmless because that would mean that her testimony prevailed in a proverbial clash as to whether S.S.'s testimony should be believed. Without Ms. Murdoch's testimony at that point, Dr. Cave's testimony would have been more likely to lead to an acquittal, creating grave doubt as to whether Ms. Murdoch's inappropriate testimony had a substantial impact. Did you disclose Cave as a witness at the same time the prosecution disclosed their expert? I believe the expert disclosures were timely. I do not recall the exact time frame of who disclosed first. I believe Cave may have been disclosed first. All right, so Cave's comment, if your theory on the government's expert is correct, it's also applicable as to Cave, isn't it? Was Cave talking about credibility? I see I'm out of time, but if I may answer. I agree that there were aspects of Dr. Cave's testimony that were objectionable, Your Honor. The government did not object. And with respect to harmlessness, I don't have a case to cite for this, but I don't believe that it would be appropriate for the government to introduce inadmissible evidence and then as a way of repairing the harm caused by that, simply decline to object to other objectionable testimony as a way of fixing the issue. And certainly, to the extent it could be said that Ms. Murdoch's testimony could be appropriate, it would only, in theory, be appropriate in rebuttal to Dr. Cave's testimony, not prior to it. And if there's no further questions. Thank you, counsel. Thank you. May it please the Court, Thomas Duncombe for the United States. The district court did not abuse its discretion by allowing expert testimony on the disclosure process in child sex abuse cases for two reasons. First, that disclosure process is outside the knowledge and experience of the average juror. And second, the expert here properly refrained from commenting on SS's credibility. The testimony here was in the nature of what a panel of this court in Carew called profile characteristics. Counsel, before you go too far down the road, the second issue as to generally about this expert's testimony, as to the first issue and Murdoch's testimony regarding research, comparative research, of children's propensity to omit details versus children's propensity to make things up, you state on page 21 of your brief, albeit in the headline, you said that this district court did not err, plainly or otherwise. And then you go on in the headline. After that, you say nothing about whether or not that was error. And at the pinnacle of our responsibilities is to determine whether or not there is error in the court below. But you give us no help on that. Was it error that that testimony came in? No, Your Honor. And there's several reasons for that. And first, the court in Magnin and the court in Snowden and the courts in all the other cases that the defendant cites, when finding error, were talking about statistics that discussed overtly the propensity of children to make up abuse. Saying either, in my professional experience, I've done this for 16 years and only one child has ever lied to me, or the statistics say that 99.5 percent of children tell the truth. That was not the character of the evidence here. If you look at the context in which the statement came out, which is on volume 3 at page 118 of the record, the prosecutor and Ms. Murdoch are discussing how difficult it is for children to come forward and disclose child sex abuse, what the Eighth Circuit in St. Pierre referred to as the extreme pressure on children not to disclose. And so to your question earlier, Judge, about whether we would be an outlier circuit with regard to allowing testimony like Ms. Murdoch's, I would add the Eighth Circuit in St. Pierre to the list of circuits that have addressed this issue. But to the statistics comment specifically, the better practice on behalf of the prosecutors going forward would be to steer clear of statistics altogether, because it's clear that they are a lightning rod in cases like these. However, that does not mean that admitting the statistic in this case was an error. And just like the court in Magnin declined to consider whether an error, whether the error in admitting the statistic was plain, because it was so clear that the error didn't affect Magnin's substantial rights, here the issue is the same. I'll admit that the closest question is whether it's an error. But counsel, I understand that. And my looking at the question before Ms. Murdoch answered indicates that the prosecutor was doing exactly what you suggest. The prosecutor was being very careful. The questions were about permission. And then Murdoch kind of volunteers this comparison that if applied in this case, would lead to the inference that it is not only unlikely, but very much unlikely, that a child would make up abuse in being interviewed. Isn't that the natural inference there? And isn't that error? The government concedes that the closest question in the plain error review in this case is on the question of whether it was error. It certainly did not serve the government to bring out that statistic. It didn't because the defense then used it to their own purposes in cross-examination. At Record Volume 3 at pages 150 and 151, the defense attorney actually took what was a comparative statistic and made it sound as though what Ms. Murdoch was saying was that 20 percent of children make up stories of abuse that didn't happen. She got Ms. Murdoch to go along with her and agree with that, but certainly that is of a different character than the comments about statistics that have been made in previous cases, and particularly Magnin from this circuit and Snowden from the 11th Circuit. And in this case, what we have here is a comment about statistics that says that children are more likely to omit details from abuse that happened than to make up details of a sexual abuse. I've got a question because you've used the language a couple of times about plain error, and I noticed in your brief, are you still arguing that the standard of our review here in this case is plain error simply because he files a motion in limine and the trial court handles it there, but he did not make the same objection during trial? Is that your position as to why plain error applies? No, not the same objection, Judge Baldock. Does plain error even apply here? Plain error applies here. You better explain it to me. Well, when the government wrote its brief arguing that this court should not consider the error even under plain error review, arguing that the appellant had waived plain error review, the appellant appropriately came back in reply brief and ran through the gauntlet of the plain error factors. So the appellant's argument in reply brief that plain error review is available to him is well taken. Now, plain error review applies here because the general rule announced in Mejia-Alarcón is that you must renew your objection at trial in order to preserve it. The exception under Mejia-Alarcón requires that the court have, without equivocation, ruled on the issue that you're now trying to bring to the circuit court to resolve. That wasn't done here. The issue before Judge Egan at the pretrial process was whether the government could call Ms. Murdoch as a witness at all because the defense argued that there could be no other purpose for her testimony than to vouch for S.S.'s credibility. The court limited its order to the general character of the testimony, noting that in prior cases, this Court and others have allowed expert witnesses to discuss the disclosure process in child sex abuse cases because it's beyond the ken of the average juror. However, it was incumbent upon Mr. Parson to do what he did nine other times during Ms. Murdoch's direct examination, and if he felt that a particular question and answer was going beyond what the court allowed in its pretrial order, to bring that to Judge Erickson's attention so that Judge Erickson could judge in the first instance in the facts and context in which the question and answer came out, was that erroneous? And that's the reason why Mejia-Alarcón has that standard, because we want, before we ask a panel of this Court to rule in the first instance, was that question and answer improper in the context in which it came out? We want the judge to be able to answer that question in the first instance. However, as we said in our brief, under any standard of review, whether it's preserved or whether it wasn't preserved, the error was not plain, and if it is not under plain error review, no error affected Mr. Parson's substantial rights. Because although the central question in this case was whether the jury should believe S.S. or whether they should instead believe Parson, the question on whether they should believe S.S. was never particularly close, and it was never as close as the defense wanted to make it seem to the jury. And that's for a number of reasons. First, as Judge Morris pointed out, there were a number of corroborating facts about S.S.'s disclosures. Second, as also Judge Morris pointed out, Mr. Parson undercut his own credibility by, first of all, admitting that he had lied in the past to cover up his own physical abuse, and he did that to avoid getting in trouble for it. But third, and maybe most importantly, the defense theory wasn't that S.S. was lying. The defense theory was that Lynette Wilson, the grandmother, had coached S.S. to say these particular things, and it was all Lynette Wilson's motive to bring up this phantom story in the first place. That didn't jive with the chronology in this case for a number of reasons. Number one, that the first person to bring the abuse to the attention of the authorities was Judy Nelson, a friend of Mr. Parson's family, not Lynette Wilson, and that Lynette Wilson had custody of S.S. for five months before S.S. felt comfortable enough to disclose to Lynette Wilson such that Ms. Wilson brought her to the attention of someone who could do another interview. I don't think that changes the theories. I mean, the government's theory is still that the victim was lying. It's just that she was told to lie by her grandmother, so there's still certainly a... No, respectfully not. The defense attorney in his closing argument where he repeatedly accused Kate Shell of lying, repeatedly accused Lynette Wilson of lying, and just about everyone else who took the stand, he was very clear that he was not calling S.S. a liar. He said, she's a sweet, impressionable girl. I couldn't be comfortable with myself if I said anything else about her. It's all about Lynette Wilson. And in fact, one of the first things that the jury heard in this case was from defense counsel in opening statement, bringing out several specific statements and specific facts about why Lynette Wilson is the reason why you're all here today, ladies and gentlemen, because she wanted to nail the defendant and because she concocted this story about S.S. And defense counsel said in that same opening, Dr. Cave is going to come before you and tell you why this is one of the most blatant examples of creation of a story that you'll ever hear. So it was in that context that the government brought forth Rachel Murdoch to give some general context to a jury that probably otherwise wouldn't have had it about how difficult it is for children to disclose in the child sex abuse context. If there are no other questions, the government would ask the court to affirm the ruling below. Thank you. Thank you, counsel. Appreciate your arguments very much. And the case will be submitted and counsel are excused. We're going to close the courtroom for our next.